## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN,
## SOUTHERN DIVISION

| | |
|---|---|
| DR. LOUIS L. SOBOL, M.D., a Michigan resident, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) |
| Plaintiff, | ) )  Case No. |
| v. | ) ) |
| IMPRIMIS PHARMACEUTICALS, INC., | ) ) ) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

Plaintiff, Dr. Louis L. Sobol, M.D. ("Sobol" or "Plaintiff"), brings this action on behalf of himself and all other persons similarly situated and, except for those allegations pertaining to Plaintiff or his attorneys, which are based upon personal knowledge, alleges the following upon information and belief against defendant Imprimis Pharmaceuticals, Inc. ("Imprimis" or "Defendant"):

## PRELIMINARY STATEMENT

1.  Defendant has sent advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the

regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2.    Defendant sent Plaintiff at least one advertisement by facsimile and in violation of the TCPA. Exhibit A.

3.    Plaintiff brings this action on behalf of himself and a class of all similarly-situated persons, and against Defendant, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages if the Court determines the violations were knowing or willful, injunctive relief, compensation and attorney fees (under the conversion counts), and all other relief the Court deems appropriate under the circumstances.

4.    Unsolicited faxes damage Plaintiff and the other recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. Moreover, a junk fax interrupts the recipient's privacy. An unsolicited fax wastes the recipient's

2

valuable time that would have been spent on something else.

## PARTIES, JURISDICTION, AND VENUE

5.     Plaintiff is a Michigan physician with an office in West Bloomfield, Oakland County.

6.     On information and belief, Imprimis is a Delaware corporation with its principal place of business in San Diego, California.

7.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

8.     Personal jurisdiction exists over Defendant in Michigan because Defendant has transacted business and committed tortious acts within the State.

9.     General personal jurisdiction exists over Defendant because Defendant is licensed by the State of Michigan to sell pharmaceuticals in Michigan.

10.    Venue is proper in the Eastern District of Michigan, Southern Division because Defendant committed statutory torts within this District and a significant portion of the events took place here.

3

## FACTS

11.    Defendant is a pharmaceutical wholesaler that sells controlled substances and other physician supply products in in all 50 states.

12.    Defendant sent advertisements by facsimile to Plaintiff and a class of similarly-situated persons. Whether Defendant did so directly or with the assistance of a third party (yet unknown to Plaintiff), Defendant is directly liable for violating the TCPA.

13.    Plaintiff has received at least one of Defendant's advertisements by facsimile. A true and correct copy of the fax received on or about September 7, 2016 is attached as Exhibit A.

14.    In this action, Plaintiff intends to discover the total number of Defendant's advertisements sent to Plaintiff by fax. Exhibit B, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

15.    Exhibit A is a one-page document Defendant sent by fax promoting Defendant's topical sinus therapies, liquid unit dose vials, custom prescription pads, and personalized clinical consultants. The fax advertises the commercial availability or quality of property, goods, or

4

services. <u>Exhibit A</u> provides information about the availability and quality of Defendant's pharmaceuticals and personalized services. <u>Exhibit A</u> provides Defendant's telephone number and email information, methods for contacting Imprimis to purchase its various pharmaceuticals and services. <u>Exhibit A</u> seeks to increase foot traffic to Defendant's vendor booth at the American Academy of Otolaryngology – Head and Neck Surgery Annual Meeting. <u>Exhibit A</u> encourages recipients to "Enter to win a NasoNeb."

16.    <u>Exhibit A</u> includes Imprimis's name, logo, telephone number and email address in large font.

17.    <u>Exhibit A</u> does not include the opt-out notice required by the TCPA. *See* 47 U.S.C. § 227 (b) (2) (D) & (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v).

18.    On information and belief, <u>Exhibit A</u> is a form advertisement that Defendant sent by facsimile to Plaintiff and more than 39 other persons in violation of the TCPA.

19.    Plaintiff and the other class members owe no obligation to protect their fax machines from Defendant. Their fax machines are ready to send and receive their urgent communications, or private

5

communications about patients' medical needs, not to receive Defendant's unlawful advertisements.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action on behalf of himself and all others similarly situated as members of a class, initially defined as follows:

> Each person that was sent one or more telephone facsimile messages promoting the commercial availability or quality of property, goods, or services from "ImprimisRX" but not stating on its first page that the recipient may make a request to the sender not to send any future ads and that failure to comply with such a request within 30 days is unlawful.

Plaintiff expressly reserves the right to modify the proposed class definition or propose subclasses after discovery about Defendant's fax advertising program.

21. Excluded from the class are Defendant, each of Defendant's officers, directors, legal representatives, heirs, successors, and assigns, any entity in which Defendant has a controlling interest, any parent, subsidiary or affiliated company of Defendant's, and any Judge assigned to this action, including his or her immediate family.

22. Plaintiff intends to discover other, substantially-similar

advertisements Defendant sent without the opt-out notice required by the TCPA. <u>Exhibit B</u>.

23.    This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

24.    **<u>Numerosity/impracticality of joinder.</u>** On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiff, but will be obtained from Defendant's records or the records of third parties.

25.    **<u>Commonality and predominance.</u>** There is a well-defined community of interest and common questions of law and fact that

predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

> a.   Whether Defendant sent advertisements by facsimile promoting the commercial availability or quality of property, goods, or services;

> b.   Whether Exhibit A and other yet-to-be-discovered facsimiles sent by or on behalf of Defendant advertised the commercial availability or quality of property, goods or services;

> c.   The manner and method Defendant used to compile or obtain the list(s) of fax numbers to which it sent fax advertisements;

> d.   Whether Defendant obtained prior express consent (invitation or permission) before sending advertisements by fax;

> e.   Whether Defendant's fax advertisements contained opt-out notices that complied with the TCPA;

> f.   Whether Plaintiff and the other class members should

8

be awarded statutory damages;

g.    If the Court finds that Defendant willfully or knowingly violated the TCPA, whether the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount;

h.    Whether the Court should enjoin Defendant from faxing advertisements in the future; and

i.    Whether Defendant's conduct as alleged herein constituted conversion.

26.    **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because Plaintiff and all class members were injured by the same wrongful practices. Plaintiff and the members of the class received Defendant's advertisements by facsimile and those advertisements did not contain the opt-out notice required by the TCPA. Under the facts of this case, because the focus is upon Defendant's conduct, if Plaintiff prevails on its claims, then the other putative class members will prevail as well.

9

27. **Adequacy of representation.** Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class it seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

28. **Prosecution of separate claims would yield inconsistent results.** Even though the questions of fact and law in this action are predominantly common to Plaintiff and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendant to operate under if/when class members bring additional lawsuits concerning the same unsolicited fax advertisements of if Defendant choose to advertise by fax again in the future.

29. **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the

10

fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

<u>COUNT I</u>
<u>TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227</u>

30.   Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

31.   Plaintiff brings Count I on behalf of himself and a class of similarly situated persons against Defendant.

32.   The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

11

33.   The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

34.   The TCPA provides a private right of action as follows:

> 3.   <u>Private right of action</u>. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> > (A)   An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> >
> > (B)   An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> >
> > (C)   Both such actions.

47 U.S.C. § 227 (b) (3).

35.   The Court, in its discretion, may treble the statutory damages if it determines that a violation was knowing or willful. 47 U.S.C. § 227 (b) (3).

36.   The TCPA requires that every advertisement sent by facsimile must include an opt-out notice clearly and conspicuously

displayed on the bottom of its first page. 47 U.S.C. § 227 (b) (2) (D) and (E); 47 C.F.R. § 64.1200 (a) (4).

37.    The TCPA expressly mandates the form and content of an opt-out notice. 47 U.S.C. § 227 (b) (2) (D) & (E), in relevant part, states:

In implementing the requirements of this subsection, the Commission …

(D) shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if…

(i) the notice is clear and conspicuous and on the first page of the unsolicited advertisement;

(ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;

(iii) the notice sets forth the requirements for a request under subparagraph (E);

(iv) the notice includes—

(I) a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender; and

(II) a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement; the Commission shall by rule require the sender to provide such a mechanism

and may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, exempt certain classes of small business senders, but only if the Commission determines that the costs to such class are unduly burdensome given the revenues generated by such small businesses;

(v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit an individual or business to make such a request at any time on any day of the week; and

(vi) the notice complies with the requirements of subsection (d) of this section;

(E) shall provide, by rule, that a request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if—

> (i) the request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

> (ii) the request is made to the telephone or facsimile number of the sender of such an unsolicited advertisement provided pursuant to subparagraph (D)(iv) or by any other method of communication as determined by the Commission; and

> (iii) the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine;

38.    The FCC's regulations at 47 C.F.R. § 64.1200 (a) (4) (iii) &

(v) expressly require the following:

(iii) The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if -

(A) The notice is clear and conspicuous and on the first page of the advertisement;

(B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(4)(v) of this section is unlawful;

(C) The notice sets forth the requirements for an opt-out request under paragraph (a)(4)(v) of this section;

(D) The notice includes -

(1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and

(2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or email address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and

(E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an

individual or business to make an opt-out request 24 hours a day, 7 days a week.

…

(v) A request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if -

    (A) The request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

    (B) The request is made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement; and

    (C) The person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine.

39.   Here, Defendant violated 47 U.S.C. § 227 (b) (1) (C) by sending an advertisement by facsimile (such as Exhibit A) to Plaintiff and the other class members without their prior express invitation or permission.

40.   Furthermore, Defendant violated 47 U.S.C. § 227 (b) (2) (D) and (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v) by failing to include a compliant opt-out notice. Exhibit A.

41.   Defendant's facsimile advertisement contains no opt-out

16

notice. <u>Exhibit A</u>.

42.    In violation of the TCPA, Defendant's failure to include any opt-out notice does not inform recipients that they may make an opt-out request and that Defendant's failure to comply with an opt-out request within 30 days is unlawful.

43.    Furthermore, the complete lack of any opt-out notice does not inform the recipients of the requirements for Plaintiff or any member of the putative class to properly request an opt-out as explained by 47 C.F.R. § 64.1200 (a) (4) (v). Specifically, the missing opt-out notice does not inform Plaintiff and other putative class members that they must identify the telephone number(s) of the telephone facsimile machine(s) to which the opt-out request relates. Additionally, the missing opt-out request fails to inform Plaintiff and the putative class that a request must be made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement. Finally, the missing opt-out request fails to inform Plaintiff and the putative class that the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise,

17

to send such advertisements to such person at such telephone facsimile machine.

44.   Contrary to the TCPA, the Defendant's lac of an opt-out fails to provide recipients a toll-free telephone number.

45.   Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4) (iii).

46.   Defendant's failure to include a compliant opt-out notice on its fax advertisements makes irrelevant any express consent or established business relationship ("EBR") that otherwise might have justified Defendant's fax advertising campaigns. 47 C.F.R. § 64.1200 (a) (4).

47.   The TCPA is a strict liability statute and Defendant is liable to Plaintiff and the other class members even if Defendant's actions were negligent. 47 U.S.C. § 227 (b) (3).

48.   Even if Defendant did not intend to injure Plaintiff and the

other class members, did not intend to violate their privacy, and did not intend to waste their valuable time with Defendant's advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

49. If Defendant's actions were knowing or willful, then the Court has the discretion to increase the statutory damages up to three times the amount. 47 U.S.C. § 227 (b) (3).

50. Defendant is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, or the faxes were sent on its behalf.

51. Defendant knew or should have known that Plaintiff and the other class members had not given express invitation or permission for Defendant or anybody else to fax advertisements about Defendant's goods, products, or services, that Plaintiff and the other class members did not have an established business relationship with Defendant, that Exhibit A is an advertisement, and that Exhibit A does not display a compliant opt-out notice as required by the TCPA.

52. Defendant's actions damaged Plaintiff and the other class members. Receiving Defendant's junk faxes caused the recipients to lose

paper and toner consumed in the printing of Defendant's faxes. The subject faxes used the fax machines of Plaintiff and the other class members. The subject faxes wasted Plaintiff's valuable time, requiring an employee to receive and review Defendant's unlawful fax; time that otherwise would have been spent on Plaintiff's business activities. Defendant's faxes unlawfully interrupted Plaintiff and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of unlawful fax advertisements occurred outside Defendant's premises.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendant as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award $500.00 in statutory damages for each of Defendant's violations of the TCPA;

C.     That, if it finds Defendant willfully or knowingly violated the TCPA, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount (Plaintiff requests trebling);

D.     That the Court enter an injunction prohibiting Defendant from violating the TCPA; and

E.     That the Court award costs and such further relief as the Court may deem just and proper.

**COUNT II**
**CONVERSION**

53.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

54.     Plaintiff brings Count II on behalf of himself and a class of similarly situated persons and against Defendant.

55.     By sending advertisements to their fax machines, Defendant improperly and unlawfully converted the class's fax machines to Defendant's own use. Where printed (as in Plaintiff's case), Defendant also improperly and unlawfully converted the class members' paper and toner to Defendant's own use. Defendant also converted Plaintiff's time to Defendant's own use, as they did with the valuable time of the other

21

class members.

56.   Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other class members each owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

57.   By sending them unsolicited faxes, Defendant permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

58.   Defendant knew or should have known that their misappropriation of paper, toner, and employee time was wrongful and without authorization.

59.   Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendant.

60.   Defendant's unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in

22

receiving, routing, and reviewing Defendant's illegal faxes. Defendant knew or should have known employees' time is valuable to Plaintiff.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendant as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award appropriate damages;

C.     That the Court award punitive damages;

D.     That the Court award attorney's fees;

E.     That the Court award costs of suit; and

F.     That the Court award such further relief as it may deem just and proper under the circumstances.

<u>COUNT III</u>
<u>STATUTORY CONVERSION UNDER</u>
<u>MICH. COMP. LAWS § 600.2919(a)(1)(a)</u>

61.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

23

62.    Plaintiff brings Count III on behalf of himself and a class of similarly situated persons against Defendant.

63.    Defendant sent unsolicited faxes converting Plaintiff's fax machine, paper, toner, and employees' time for Defendant's own use.

64.    Defendant's actions are in violation of Mich. Comp. Laws § 600.2919(a) (1) (a) and Plaintiff and the class members are entitled to recover three times the amount of actual damages sustained, plus the costs and reasonable attorneys' fees.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendant, as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the Class representative, and appoint Plaintiff's counsel as counsel for the Class;

B.    That the Court award three times the amount of actual costs;

C.    That the Court award punitive damages;

D.    That the Court award reasonable attorney's fees;

24

E.     That the Court award costs of suit; and

F.     That the Court award such further relief as it may

deem just and proper.

Respectfully submitted,

DR. LOUIS L. SOBOL, M.D., a Michigan
resident, individually and as the
representative of a class of similarly-
situated persons,

By: /s/ Phillip A. Bock

Phillip A. Bock
Robert M. Hatch (MI#P46566)
Tod A. Lewis
David M. Oppenheim
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St,, Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Facsimile: 312-658-5555

Richard Shenkan
Shenkan Injury Lawyer LLC
6550 Lakeshore St
West Bloomfield, MI, 48323-1429
Telephone: 248-562-1320
Facsimile: 888-769-1774